Under the facts of this case, the court erred in failing to submit to the jury the issue raised by the plea of non est factum and the evidence, and in granting the defendants' motion for a nonsuit.
 DECIDED MARCH 15, 1949.
H. J. McGrath Company brought an action in the Superior Court of McDuffie County against Thomson Mercantile Company, a partnership composed of W. S. Mobley, H. T. Mobley, and O. P. Hunt, for an alleged breach of a written contract. Briefly summarized, the petition alleged that the plaintiff and the defendants entered into a contract in June 1946, whereby the plaintiff agreed to sell and the defendants agreed to purchase certain described merchandise (300 cases of canned beans) at specified prices. In compliance with the terms of the contract, the plaintiff, on or about January 15, 1947, shipped the merchandise to the defendants, who refused to accept the shipment *Page 760 
or to pay for the merchandise, and refused to comply with the terms of the contract. The plaintiff now has on hand and is holding the merchandise for delivery according to the terms of the contract, and the defendants are indebted to the plaintiff in the sum of $1264.90 plus interest. A copy of the contract sued upon was attached to the petition and the material portions are as follows: "No. 10 226 Contract Broker Fred Yarbrough Co. This contract made and entered into by and between the H. J. McGrath Company of Baltimore 24 Md. (Seller) and Thomson Mercantile Co., of Thomson, Ga. (Buyer), Witnesseth: That the Seller agrees to sell and the Buyer agrees to buy from the Seller, on terms hereof, the following goods of current season pack: [Here the goods are listed.] Firm at opening price in case of price changes on cans, cartons, or labels, price applicable hereto will be increased or decreased in the amount of such change. Shipment: When packed. Terms: 1-1/2% 10 days, 11 net. FOB Baltimore. Shipment to be made at Sellers option and as close to dates specified herein as possible, Buyer to furnish rounting [sic] instructions thirty days prior to packing season or immediately upon request thereof by Seller, otherwise Buyer agrees that Seller may ship by any reasonable route or place goods covered by this contract in storage at costs and risk of Buyer. . . The Seller may, at any time, annul this contract as to goods unshipped, if the Buyer fails to comply with the terms hereof, or of any other contract heretofore or hereafter entered into between the parties. . . It is further understood and agreed that the Seller at its option may deliver 75% to 100% of the above quantities, and the Buyer shall accept such delivery in full settlement of this contract. If prevented from making 75% delivery by injury to or failure of crops, Seller may deliver what it packs as nearly as practicable pro rata with other orders taken or to be taken by Seller, and such delivery shall be in full settlement of this contract. . . No alterations are to be made to this contract without the approval of both the buyer and the Seller. Thomson Mercantile Co. Buyer The H. J. McGrath Company Seller Dated June 29, 1946 Baltimore, Md."
The defendants filed their answer and a plea of non estfactum *Page 761 
Paragraph 3 of the answer alleged that "during the month of June, 1946, plaintiff [defendants?] ordered the merchandise set forth in the plaintiff's petition, same to be shipped to defendant within a reasonable time from said order; that about four months thereafter, the defendant not having received said shipment, canceled the order." The plea of non est factum was based upon the ground that "Thomson Mercantile Company nor neither of the members thereof, nor did anyone authorized to act for the Thomson Mercantile Company or either of the members execute the instrument sued upon." No demurrers were filed by either the plaintiff or the defendants. The plaintiff introduced the following evidence: Robert Mairs, executive of H. J. McGrath Company in charge of sales, testified: "I received this contract that we are suing on here; it came to us through the mail from Fred Yarbrough Company, a man in the brokerage business in Augusta, Georgia. He is the broker that handled the sale. When we received this copy here along with two other copies that were a part of it, and this here was returned to Mr. Yarbrough. I am testifying that when I received this I mailed this back with the letter. These copies were all returned to Mr. Yarbrough. This calls for the purchase of certain merchandise. After that order was received these goods were shipped to Thomson Mercantile Company, at Augusta, which is a normal transaction in business. This is the original contract, and a copy of that is attached to the petition. This merchandise was packed on January 14, 1947, and it was shipped on January 15, 1947. This was shipped in the regular order of business, according to the order. The Thomson Mercantile Company did not accept that order and pay us for it. As to what reason they gave for not accepting it — well, they wrote us a letter and advised us about it. We got that letter and you have it there. We got this letter here through Mr. Yarbrough, and it was written by the Thomson Mercantile Company. It is on Thomson Mercantile Company stationery, and it is addressed to Mr. Fred Yarbrough at Augusta, Georgia, and there is a postscript written on it here, signed by the Fred Yarbrough Company, on the typewriter, to Mr. Bob Stearne. Mr. Stearne was an employee of ours at the time, employed as a salesman. This letter from the Thomson Mercantile *Page 762 
Company came to us through the mail, and I assume that it came from them, as it is on their stationery, it came to us through the U.S. mail and I assume they wrote it. The signature on this letter, Thomson Mercantile Company, is typewritten." On cross-examination, Mr. Mairs testified: "As to whether or not I know if the Thomson Mercantile Company ever signed any contract with our people or not — well, I can only tell you what was represented to me; I was not a witness there when they signed it; I did not witness the signing of it. I never witnessed the signing of the contract by Thomson Mercantile Company. The only thing that I do know is that we received a request or order from somebody to ship this merchandise; that is correct, that is all that I know, and that the merchandise was shipped to Mr. Yarbrough; that is, it was shipped in Mr. Yarbrough's care, to customers in the car, I think there were seven or nine in the car, . . that is the normal procedure in business, and that these shipments are distributed at the broker's warehouse. As to whether or not this so-called request for goods was in June, 1946 — that is right, and then in January, 1947, the car was loaded. . . I have already stated that I did not see this contract executed. But it was represented to me that it was a contract, and it came to us from Thomson Mercantile Company through the mail. As to whether or not as a matter of fact it came to us from the Thomson Mercantile Company through the mail — well, I am afraid I can't answer that, to be frank with you; the mail comes into our office and is opened at the mail desk, and unless it is registered we don't keep the envelope; . . but this letter came to us in the normal course of business, just as hundreds of other contracts are presented to us. As to why we were selling beans in June if we couldn't fill that order until January — well, it was accepted in the normal course of business, and we have done that ever since we have been in business, twenty-five years. As so far as the six or seven months is concerned, we have taken orders for eleven months ahead, for all kinds of canned food. It was approximately seven months from the time we contend we received this order until we shipped these goods. As to whether or not I know where these goods are now — they are in Mr. Fred Yarbrough's warehouse; they were shipped to him for distribution; *Page 763 
I am just taking his word for that. And we have a letter in the file there about it, if you want to see it."
H. T. Mobley, sworn for purposes of cross-examination, testified: "I am one of the partners of Thomson Mercantile Company. The letters you refer to there were written by authority of our company, by me or by one of the partners. The company did not ship us this merchandise; they shipped it through Yarbrough. And we had already canceled that. As to whether or not the company shipped it — I don't know whether they shipped it or not; we haven't seen the beans. But we wrote the company we wouldn't take them, and we told Mr. Yarbrough."
The following letters were introduced in evidence: "Thomson, Ga., Jan. 23, 1947. Mr. Fred Yarbrough, Augusta, Ga. Dear Fred: — After talking over the matter with Mr. Hunt we decided that we could not use the Pork Beans as we have over 500 cs Pork 
Beans on hand and they are not moving. We are very sorry about the matter but we wrote you to cancel all our bookins [sic] over thirty days old. Please find the invoice enclosed. Yours, Thomson Mercantile Co." "Thomson, Ga., Jan. 31, 1947. The H. J. McGrath Co., Baltimore, Md. Dear Sirs: We are in receipt of your letter of the 28th and we wish to clear up a few points. We bought these beans from Mr. Yarbrough on June 29th and we have not heard anything further from them until we received an invoice from you a few days ago. This was almost seven months ago and we thought we were not going to receive them and have plenty on hand. Also during the month of November we called and also wrote Mr. Yarbrough to cancel all orders for us over thirty days old, and if he failed to contact you it seems it is his fault as we contacted the man we bought the mdse. from, and now the disagreement is between you and Mr. Yarbrough. We are very sorry this has happened and we feel sure you can dispose of the beans elsewhere. Yours, Thomson Mercantile Co." "Thomson, Ga., March 18, 1947. The H. J. McGrath Co., Baltimore, Md. Gentlemen: — Att. Mr. Mairs. We were very much surprised to receive your letter concerning the shipment of Pork and Beans when we had settled the matter with your representative on his visit to Thomson. He turned the matter over to Mr. Yarbrough, your broker in *Page 764 
Augusta, and we were to have nothing further to do with the matter. The matter now rests between you and Mr. Yarbrough and we are not connected. I will however again call your attention to the fact that the beans were not shipped when they were supposed to have been and that we canceled them with your broker two months before they were shipped and if you would give the matter more thought you would agree that we are right in the matter. Yours very truly, Thomson Mercantile Co."
The plaintiff also offered in evidence the original contract in question, which was objected to by the defendants on the ground that the same had not been signed by Thomson Mercantile Company, and that execution of the contract had therefore not been shown. This contract was attached to the brief of evidence as an exhibit and was essentially the same as the copy attached to the petition, but with the following additions: Stamped on the contract was "July 3. Rec'd. (H. J. McGrath Co.)." and "This contract will be null and void if not signed and returned within ten days from date."
Mr. Mobley was recalled for purposes of cross-examination and testified: "I received a copy of this [the contract] either from the company or from Fred Yarbrough, I received this right here, and in a day or two afterwards he sent this too. You see we were out of beans. This was just a confirmation by the H. J. McGrath Company; we got a confirmation from them. And we thought we would get the beans in thirty days. We placed the order with Mr. Yarbrough over the telephone, and we never signed that contract. As to whether or not the company sent us this to show what the contract was — yes, and we thought we would have 300 cases of beans here in thirty days. As to that signature written in there, Fred Yarbrough wrote that; that isn't our signature at all, and I don't know who signed that. I can't tell you whose handwriting that is. But we got a copy just like this right here. And these beans should have been here in thirty days. They sent us a copy of this, we got one. But none of the members of our firm signed that contract; and we have never acknowledged that we were bound by it in any way. If these beans had been shipped in thirty or sixty days, we would have taken them, because we need beans. Just this last week I bought *Page 765 
a thousand cases of tomatoes from Mr. Yarbrough, he took my order and waited a week and he says, `I am sorry, but I can't get them.' We placed the order for this stuff for immediate shipment, we didn't place it from year to year, or for shipment a year after that. We placed the order for the beans, with Fred Yarbrough; we needed the beans for immediate shipment. And a few days after that we got this paper here with the Thomson Mercantile Company's name signed to it, but Fred or somebody else signed that. This says shipment was to be made when packed. We didn't do anything right away, for we were expecting the beans."
Following the introduction of the foregoing evidence, the court, upon motion of the defendants, granted a nonsuit, to which judgment the plaintiff excepted.
A plea of non est factum positively denying the execution of an instrument sued on casts the burden of proving the execution upon the plaintiff. Martin v. Lamb,77 Ga. 252 (3 S.E. 10); Jewell v. Walker, 109 Ga. 241
(34 S.E. 337); Hall v. Eufaula Brick Co., 50 Ga. App. 466
(178 S.E. 403); Bank of Norwood v. Chapman, 19 Ga. App. 709 (6) (92 S.E. 225). But, in answer to a plea of non est factum, it is only necessary for the plaintiff to make out a prima facie case of the execution of the instrument sued on in order to authorize its admission in evidence (Jewell v. Walker, supra; Farmers Merchants Bank v. Stovall Investment Co., 50 Ga. App. 277,280, 177 S.E. 882; Bank of Norwood v. Chapman, supra); and, on the trial of an insure of non est factum, very slight evidence of the execution of the paper is sufficient to justify the judge in submitting the whole question to the jury (Emory v. Smith,54 Ga. 273); and, after the introduction of some proof of the execution, the issue made under the plea must be determined by the jury according to the preponderance of the evidence.Steiner v. Blair, 38 Ga. App. 753, 754 (145 S.E. 471). Code § 38-409 provides: "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission."
Applying the rules above to the evidence which we have set out *Page 766 
in the statement of facts preceding this opinion, we think that the jury was authorized to find that the broker, Yarbrough, was either authorized to sign the order for the beans for the partnership or, if not, that the partnership ratified his action in so doing by subsequent conduct, such as to obviate the necessity of proof of the actual execution of the contract by the partnership. One of the partners, H. T. Mobley, testified that he placed the order for the beans with Yarbrough by telephone, and that Yarbrough or someone signed the name of the defendant partnership to a written order and sent the paper thus signed to the plaintiff. The plaintiff testified through one of its officers, Robert Mairs, that the plaintiff received the order thus signed, accepted and signed it, and returned a copy of it, thus signed by the plaintiff and the defendants, to the defendants. The defendant Mobley testified that he received the copy, thus signed, either directly from the plaintiff or by way of the broker Yarbrough, but that, either way, the defendants partnership received it a few days after the oral order had been placed with Yarbrough; and that he did nothing about the matter as he considered this paper to be only a "confirmation." The plaintiff testified that some months later, in the regular order of business and in accordance with the provisions of the written contract, they shipped the beans to the defendant partnership. It appears from the evidence that, after the beans had been shipped, the defendants refused to accept them and notified the plaintiff for the first time of the partnership's denial of the written contract. See, upon the question of such conduct, Hardin v.Atlanta Gas Light Co., 71 Ga. App. 63 (30 S.E.2d 121).
We think, therefore, that under the facts of this case, the court erred in failing to submit to the jury the issue raised by the plea of non est factum and the evidence, and that consequently the court erred in granting the nonsuit.
Judgment reversed. Gardner and Townsend, JJ., concur. *Page 767